**COMMUNITY TITLE COMPANY, Plaintiff/Counterclaim Defendant/ Appellant/Cross–Respondent,**

v.

**U.S. TITLE GUARANTY CO., INC., Defendant/Counterclaimant/ Third–Party Plaintiff/Cross–Appellant,**

v.

**James P. DAVIS, Third–Party Defendant.**

Nos. 71935, 72007.

Missouri Court of Appeals, Eastern District, Division Two.

Feb. 10, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 20, 1998.

Application for Transfer Denied May 26, 1998.

Thomas A. Connelly, St. Louis, for appellant.

Charles A. Seigel III, St. Louis, for respondent.

RHODES RUSSELL, Judge.

This case involves two consolidated appeals. In Case No. 71935, Community Title Company ("CTC") appeals from the trial court's judgment against it holding that U.S. Title Guaranty Company ("U.S. Title") did not owe lease payments to CTC. The trial court found that a personal property lease, originally entered into between CTC and Community Title Company of St. Louis ("CTCSL"), had expired by its own terms and, therefore could not have been assumed by U.S. Title. We affirm the judgment in favor of U.S. Title in that the judgment was supported by substantial evidence, was not against the weight of the evidence, and did not erroneously declare the law. In Case No. 72007, U.S. Title cross appeals from the trial court's order sustaining · CTC's and James P. Davis's, an officer of CTC, motion to dismiss U.S. Title's counterclaim and third party petition for fraud, breach of fiduciary duty, and breach of contract on the trial court's finding that the claims were barred by the applicable statute of limitations. We find that the trial court erred in dismissing the counterclaim and third party petition in that the face of the counterclaim and third party petition does not irrefutably show that U.S. Title's claims were barred by statute of limitations. We reverse the dismissal of U.S. Title's counterclaim and third party petition.

On May 23, 1983, CTC, CTCSL, Gordon Gundaker, and Donald Williams entered into a stock purchase agreement by which CTC sold to Gundaker and Williams 50% of the stock of CTCSL. Paragraph 9.2 of the agreement provided that:

> [CTCSL], as tenant, shall enter into a lease with CTC, as Landlord, of personal property including office equipment, automobiles, furniture and furnishings owned by CTC and heretofore used by CTC in its title business. The lease shall be in form and substance as that attached as Exhibit B....

On June 1, 1983, CTC and CTCSL entered into the personal property lease. The lease was signed by John Barnes on behalf of both CTC and CTCSL. The personal property lease called for CTCSL to make monthly payments of $4,000 to CTC. The lease also provided that the term of the lease was five years, commencing on June 1, 1983, and ending on May 31, 1988, both dates inclusive. The lease contained no provision for automatic renewal of the term, and specifically stated that "the term of the this lease shall expire on the termination date herein mentioned without notice being required from either party."

On March 22, 1993, CTCSL entered into an asset purchase agreement with U.S. Title. Under the terms of the asset purchase agreement, U.S. Title agreed to purchase certain enumerated assets from CTCSL for $100 plus the assumption of certain liabilities. Among the specified liabilities, U.S. Title agreed to assume "all leases."

At the closing, U.S. Title presented to James Davis, president of CTC, a proposed agreement entitled "AGREEMENT RE-GARDING FURNITURE AND EQUIP-MENT." Under the terms of the proposed agreement, CTC was to assign all its right, title, and interest in its phone equipment and assign all its interest in certain furniture and equipment which CTC had previously leased to CTCSL. The proposed agreement also provided that:

> [CTC] hereby releases Lessee [CTCSL] of any and all obligations to make any further payments to [CTC] for the lease of the phone equipment described in Exhibits "A" and "B" attached hereto.

The proposed agreement was signed on behalf of U.S. Title by its president. However, Davis refused to sign the proposed agreement on behalf of CTC.

After CTCSL had sold its assets to U.S. Title, CTC made demand upon U.S. Title to pay the lease amounts under the personal property lease to CTC. U.S. Title refused to pay, and CTC filed suit in the Circuit Court of St. Louis County.

In its petition, CTC sought damages from U.S. Title for breach of the personal property lease.[1] CTC alleged that it had entered into a personal property lease with CTCSL and that U.S. Title had subsequently assumed CTCSL's obligations under the personal property lease when U.S. Title executed the asset purchase agreement with CTCSL as that document stated that U.S. Title agreed to assume "all leases." CTC further alleged that since the execution of the asset purchase agreement, U.S. Title failed to make the $4,000 monthly payments called for by the personal property lease.

In response to CTC's petition, U.S. Title filed a counterclaim against CTC and a third party petition against James Davis on August 16, 1995. In its counterclaim and third party petition, U.S. Title asserted claims for fraud, breach of fiduciary duty, and breach of contract against CTC and Davis. U.S. Title alleged that, pursuant to the asset purchase agreement, these choses-in-action against CTC and Davis were assigned to it from CTCSL.

On August 12, 1996, CTC and Davis moved to dismiss the counterclaim and third party petition on the grounds that all counts were barred by the applicable statute of limitations and that U.S. Title was not the assignee of CTCSL's claims against CTC and Davis. The trial court dismissed the counterclaim

---

1. CTC's petition contained three counts arising from the personal property lease, including a claim for quantum meruit. However, CTC elected to proceed only on Count I for breach of contract. Further, CTC never sought to recover the personal property under conversion or replevin.

and the third party petition on the grounds that the claims were barred by the statute of limitations in that the alleged damages raised in the three counts were capable of ascertainment on June 1, 1983, the date the lease began.

On November 25, 1996, Count I of CTC's petition was tried by the trial court without a jury. At trial, CTC produced only one witness, James Davis. Davis testified that from June 1, 1983, until May 1993, $4,000 per month in lease payments were made by CTCSL to CTC. Davis contended that U.S. Title was responsible for making the lease payments after May 1993, since U.S. Title had agreed to assume "all leases" under the March 1993 asset purchase agreement. Davis testified that U.S. Title had not made any payments under the personal property lease since U.S. Title had entered the asset purchase agreement with CTCSL. Davis, on behalf of CTC, asked for judgment against U.S. Title for 3–1/2 years of rent payments at the rate of $48,000 per year.

At the close of CTC's case, U.S. Title moved for judgment as a matter of law. The trial court entered judgment against CTC on its petition, finding that the personal property lease had terminated by its own terms on May 31,1988. The trial court further found that since the lease had expired, it was neither assigned to or assumed by U.S. Title as a result of the asset purchase agreement. CTC appeals from the judgment entered against it.

In its sole point on appeal, CTC asserts that the judgment of the trial court was against the weight of the evidence, erroneously declared the law, and erroneously applied the law in that although the original lease term had expired, the law implies that a lessee, holding over after the expiration of a lease, holds over subject to the terms of the written lease. Therefore, CTC argues it was entitled to judgment against U.S. Title pursuant to the lease term of $4,000 per month. We disagree.

▮▮▮▮ Our review of this point is governed by Rule 73.01(c). As that rule is interpreted,

this court is to affirm the trial court's determination unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *City of Beverly Hills v. Village of Velda Village Hills,* 925 S.W.2d 474, 475 (Mo.App.1996)(citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)). We give due regard to the trial court's opportunity to have judged the credibility of the witnesses. Rule 73.01(c)(2). The trial court is free to believe or disbelieve all, part, or none of any witness's testimony. *Schuster v. Shelter Mutual Insurance Co.,* 857 S.W.2d 381, 386 (Mo.App.1993). The trial court may disbelieve testimony even when uncontradicted. *Id.*

The crux of CTC's argument is that the evidence adduced at trial conclusively showed that the parties to the personal property lease (CTC and CTCSL) continued to operate as a month-to-month lessor-lessee under the 1983 lease, after its expiration in 1988, up to and including May 1993, within which the assets of CTCSL were sold to U.S. Title. As part of the asset purchase agreement between CTCSL and U.S. Title, CTC contends that the evidence shows that U.S. Title assumed CTCSL's obligations under the expired personal property lease. In support of its argument, CTC asserts that it has long been the view in Missouri that when a tenant holds over after the expiration of a written lease, the tenant is thereafter a month-to-month tenant subject to same terms under the written lease.[2] All the authority cited by CTC regarding month-to-month tenancies involves real property law. CTC, however, has not referred us to any authority which states that a lessee under a personal property lease becomes a month-to-month lessee after the lease expires. Nor has CTC cited any authority for the proposition that a party may assume a personal property lease after its expiration. Even if we were to accept CTC's novel legal theory, CTC has failed to meet its burden that the judgment was against the weight of the evidence or that the trial court erroneously declared the law. *Schuster,* 857 S.W.2d at 384.

---

2. *See, Housing Authority of Mansfield v. Rovig,* 676 S.W.2d 314, 316 (Mo.App.1984); *Longmoor* *Corp. v. Jeffers,* 205 S.W.2d 234, 237 (Mo.App. 1947).

█ CTC did not prove that the personal property lease continued to operate beyond its expiration date. The only evidence that CTCSL continued to make payments under the lease past its expiration date was the testimony of Davis. Davis testified that CTCSL continued to make payments to CTC under the lease up until and including May 1993. However, as stated previously, the trial court may believe or disbelieve any part of a witness's testimony. *Id.* at 386. The trial court had ample basis to doubt Davis's credibility. First, Davis, as the sole shareholder of CTC, and a director of CTCSL, had a financial interest in the outcome of the litigation. Second, Davis provided no corroborative evidence, such as canceled checks, that CTCSL continued to make lease payments after the lease's expiration date. In contrast to Davis's testimony, the personal property lease itself stated that the term of the lease ended on May 31, 1988. Considering only those facts and inferences favorable to the prevailing party, we find the trial court's holding that the personal property lease terminated by its own terms, and therefore, CTCSL's obligations under the lease could not have been assumed by U.S. Title, was supported by substantial evidence. Point denied.

The judgment in favor of U.S. Title is affirmed.

In U.S. Title's sole point in its cross-appeal, it contends the trial court erred in dismissing its counterclaim against CTC and its third party petition against Davis on the grounds of statute of limitations in that the facts pleaded therein did not clearly demonstrate that the statute of limitations had expired. We agree.

█ When reviewing the dismissal of a cause of action, we examine the pleadings, allowing the broadest intendment, treating all alleged facts as true, and construing the allegations in favor of the pleader, to determine whether they invoke principles of substantive law. *City of Chesterfield v. Deshetler Homes,* 938 S.W.2d 671, 673 (Mo.App. 1997). The trial court's dismissal of an action will be affirmed if any ground supports the motion, regardless whether the trial court relied on that ground. *W.B. v. M.G.R.,*

905 S.W.2d 134, 136 (Mo.App.1995); *Kahn v. Kahn,* 846 S.W.2d 219, 222 (Mo.App.1993). If it clearly appears from the petition that the cause of action is barred by time limitations, the motion to dismiss is properly sustained. *Klemme v. Best,* 941 S.W.2d 493, 497 (Mo. banc 1997).

█ The statute of limitations is an affirmative defense. Rule 55.08; *Lehnig v. Bornhop,* 859 S.W.2d 271, 272 (Mo.App.1993). A motion to dismiss properly raises the defense of the statute of limitations when it is clear from the face of the petition that the action is barred by time limitations. *Heintz v. Swimmer,* 922 S.W.2d 772, 775 (Mo.App. 1996). If the statute of limitations is raised as an affirmative defense, the trial court may not dismiss the petition unless it is clearly established, on the petition's face and without exception, that the cause of action is barred. *H.R.B. v. J.L.G.,* 913 S.W.2d 92, 96 (Mo.App. 1995).

In its counterclaim and third party petition, U.S. Title asserted three counts against CTC and two counts against Davis. U.S. Title alleged that at the time the personal property lease was executed, Davis was the director and sole shareholder of CTC, which was the majority shareholder of CTCSL. U.S. Title further alleged that John Barnes, an officer of both CTCSL and CTC, executed the lease on behalf of both CTC and CTCSL at Davis's instruction. U.S. Title contended that both Davis and CTC intentionally concealed the lease from the other directors and shareholders of CTCSL.

In Count I, U.S. Title alleged that by reason of a management agreement between CTC and CTCSL, and CTC's status as controlling shareholder of CTCSL, CTC owed a fiduciary duty to CTCSL. U.S. Title also asserted that Davis owed CTCSL a fiduciary duty because he was a director and officer of CTCSL. According to U.S. Title, CTC and Davis breached their respective fiduciary duties by intentionally concealing the personal property lease from the other CTCSL directors and shareholders. U.S. Title further averred that the failure to disclose the personal property lease constituted self-dealing. U.S. Title alleged that CTC's and

Davis's intentional concealment of the personal property lease had caused CTCSL, during the term of the lease, to pay an annual rent for the personal property in excess of its fair market value. U.S. Title asserted that the existence of the personal property lease and the resulting damages were not discovered by the other directors and shareholders of CTCSL until after the closing of the asset purchase agreement on May 24, 1993.

Under Count II, U.S. Title alleged that CTC and Davis committed fraud upon CTCSL by intentionally concealing the lease and the excessive rental payments thereunder. U.S. Title alleged that Davis intended to deceive the other CTCSL directors and shareholders so that they would not be able to discover or object to the lease and its corresponding excessive rental payments.

Under Count III, U.S. Title alleged that CTC breached a management agreement between CTC and CTCSL, in which CTC agreed to manage the business affairs of CTCSL. U.S. Title averred that CTC breached the management agreement by causing CTCSL to transfer excessive rental sums to CTC and by failing to disclose the sums to CTCSL.

Davis and CTC assert that all counts of U.S. Title's counterclaim and third party petition are barred by the five-year statutes of limitations contained in section 516.120, RSMo 1994[3] because CTCSL knew or reasonably should have known of the existence of the personal property lease from which those counts arose more than five years before U.S. Title filed its counterclaim and third party petition. Specifically, Davis and CTC assert that CTCSL knew of the personal property lease because paragraph 9.2 of the stock purchase agreement, which was dated May 23, 1983, and was signed by three directors of CTCSL, referenced and incorporated the personal property lease as Exhibit B. The stock purchase agreement was incorporated into U.S. Title's counterclaim and third party petition as Exhibit A. Exhibit A (the stock purchase agreement), however, did not have attached to it the personal property lease as described in paragraph 9.2. U.S.

Title, however, did incorporate the personal property lease into its counterclaim and third party petition as Exhibit C. Davis and CTC argue that the stock purchase agreement and the personal property lease were made part of U.S. Title's counterclaim and third party petition via Rule 55.22. Accordingly, Davis and CTC assert that the counterclaim and third party petition clearly showed on its face that the directors of CTCSL were on notice of the existence of the personal property lease as of May 23, 1983, because parties to an agreement are presumed to have read what they sign.

Before addressing that argument, we first address Davis's argument that U.S. Title's appeal should be dismissed as to him because he was not named in the caption in the notice of appeal. Davis asserts that U.S. Title's failure to name him in the notice means that this court does not have jurisdiction to entertain that portion of the appeal. We disagree.

Davis's argument is similar to the argument rejected in *Wilson v. Mercantile Bank,* 904 S.W.2d 44 (Mo.App.1995). Therein, the Southern District of this court held that the appeal from a judgment in favor of two defendants did not have to be dismissed as to a defendant who was not named in the plaintiff's notice of appeal. *Id.* at 47. Although plaintiff made no reference to the particular defendant in his notice, the notice did list the plaintiff as the party taking the appeal and it also listed the Southern District as the court to which the appeal was being taken. *Id.* This was in compliance with Rule 81.08(a), the rule governing notices of appeals. Noting that although plaintiff's notice had described only one of the motions which had been sustained, the plaintiff had attached a copy of the trial court's order which had sustained the two defendants' motions to dismiss. The court concluded that the omission of the defendant's name did not cause the plaintiff's notice of appeal to fail to identify the order appealed from, and therefore, plaintiff had sufficiently complied with Rule 81.08(a).

■ U.S. Title's notice of appeal omitted Davis's name from the caption. The notice

---

**3.** All references are to RSMo 1994 unless otherwise indicated.

of appeal identifies U.S. Title as the party taking the appeal, and this court as the court to which the appeal was being taken. In the portion of the notice calling for a brief description of the case, U.S. Title wrote, "[U.S. Title's] claim of breach of fiduciary duty and fraud against [CTC] and [Davis] and claim of breach of management agreement against [CTC]." In the portion of the notice asking for a description of the judgment or order appealed from, U.S. Title wrote, "Grant of Appellant/Cross Respondent [CTC's] and Cross Respondent ... Davis' Motion to Dismiss Counterclaim and Third–Party Petition of U.S. Title Guaranty Co." Attached to U.S. Title's notice was the "REQUIRED SUPPLEMENTS TO NOTICE OF CROSS APPEAL" which did include Davis's name in the caption.

We find that U.S. Title complied with Rule 81.08(a) in that its notice specified the party taking the appeal, the court to which its appeal was taken, and specified the order being appealed from. U.S. Title's failure to name Davis in the caption of the notice did not violate Rule 81.08(a). The notice specifically stated that U.S. Title was appealing from the trial court's granting of CTC's and Davis's motion to dismiss its counterclaim and third party petition. The only authority Davis cites for requiring that a party's name be listed in the caption of a notice is Rule 55.02. Davis's reliance on Rule 55.02 is misplaced. Rule 55.02 refers to what must be contained in a petition and not what must be contained in a notice of appeal. We find Davis's argument without merit.

We next turn to the issue of whether the trial court correctly dismissed U.S. Title's fraud claim based upon the grounds of statute of limitations. The applicable statute of limitations for a fraud claim is five years. Section 516.120(5). The accrual of a fraud claim is governed by section 516.120(5), which provides:

> An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting fraud.

■■■ Thus, an action for fraud accrues not when the damage occurs or can be ascertained, but when "facts constituting the fraud are discovered." *Schwartz v. Lawson,* 797 S.W.2d 828, 832 (Mo.App.1990). The statute of limitations begins to run at the time a cause of action in fraud accrues, which is when plaintiff "discovered or in the exercise of due diligence, should have discovered the fraud." *Gilmore v. Chicago Title Insurance Co.,* 926 S.W.2d 695, 698 (Mo.App.1996)(citing *Burr v. National Life & Accident Insurance Co.,* 667 S.W.2d 5, 7 (Mo.App.1984)). Section 516.120(5) gives a plaintiff ten years from the commission of the fraudulent act to discover the fraud. *Gilmore,* 926 S.W.2d at 698. Should the plaintiff fail to discover the fraud within the ten year period, the five year statute of limitations period begins to run at the expiration of the ten year period. *Id.*

■■■ The plaintiff maintains the duty to make inquiry to discover facts surrounding fraud, and, therefore, if the means of discovery exist, the plaintiff will be deemed to know of the fraud so as to begin the running of the statute of limitations. *Burr,* 667 S.W.2d at 7. However, when a fiduciary relationship exists, only the *actual* discovery of the fraud serves to begin the limitations period. *Gilmore,* 926 S.W.2d at 699; *Burr,* 667 S.W.2d at 7; *Nerman v. Alexander Grant & Co.,* 926 F.2d 717, 721 (8th Cir.1991) (emphasis supplied). Because a fiduciary relationship creates a false sense of security, only actual discovery of the fraud begins the period of limitations. *Burr,* 667 S.W.2d at 7.

CTC and Davis assert that CTCSL had the means to discover the alleged fraud (the concealment of the personal property lease) when the directors of CTCSL signed the stock purchase agreement on May 23, 1983, because the agreement specifically referred to the personal property lease in paragraph 9.2. Thus, CTC and Davis argue that since CTCSL had the means for discovering the alleged fraud, CTCSL was deemed to know of the alleged fraud upon signing the stock purchase agreement. Davis and CTC assert that the statute of limitations began to run on May 23, 1983, and concluded on May 23, 1988.

U.S. Title alleged that Davis and CTC owed fiduciary duties to CTCSL. Giving the counterclaim and third party petition its broadest intendment and treating that allegation as true, CTCSL's cause of action accrued and the limitations period began to run only on its *actual* discovery of the fraud. *Burr,* 667 S.W.2d at 7. Nothing on the face of the counterclaim and third party petition clearly establishes that CTCSL actually discovered the alleged fraud on May 23, 1983. In fact, U.S. Title alleged that the other directors and shareholders of CTCSL did not discover Davis's and CTC's intentional concealment of the lease, the existence of the lease, and the resulting damages, until after the closing of the asset purchase agreement on or about May 24, 1993.

U.S. Title's counterclaim and third party petition was filed on August 16, 1995. Section 516.120(5) grants ten years for the discovery of the fraud, and requires that an action for fraud be brought within five years of discovery. If the fraud is not discovered within ten years, then the cause of action is deemed to have accrued at the end of that period and limitations commence to run from that time, so that the action is barred in any event after fifteen years of the commission of the fraud. *Schwartz,* 797 S.W.2d at 832. If May 23, 1983, is accepted as the date the alleged fraud was committed, then CTCSL did not discover the fraud within the ten year period since it allegedly did not discover the fraud until May 24, 1993. However, if the cause of action is deemed to have accrued at the end of the ten year period (May 23, 1993), then U.S. Title, as an alleged assignee of CTCSL's cause of action, had until May 23, 1998, to file the claim. Therefore, the trial court erred in dismissing U.S. Title's action for fraud because of the statute of limitations.

We now turn to Counts I and III, breach of fiduciary duty and breach of contract, which were also dismissed upon the grounds of statute of limitations. A claim for breach of fiduciary duty is governed by the five-year statute of limitations found in section 516.120(4). *Klemme,* 941 S.W.2d at 497; *Lehnig,* 859 S.W.2d at 273; *Koester v. American Republic Investments, Inc.,* 11 F.3d 818, 821 (8th Cir.1993). A claim for breach of contract is governed by the five-year statute of limitations found in section 516.120(1). *O'Reilly v. Dock,* 929 S.W.2d 297, 300 (Mo. App.1996). Thus, both section 516.120(4) and section 516.120(1) require that an action for breach of fiduciary duty and a breach of contract action be brought within five years of when the action accrues. Section 516.100 explains how to determine when the action accrues:

> [T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained.

In determining when a statute of limitations begins to run, "[d]amage is ascertainable when the fact of damage 'can be discovered or made known' not when a plaintiff actually discovers injury or wrongful conduct...." *H.R.B.,* 913 S.W.2d at 95 (quoting *Sheehan v. Sheehan,* 901 S.W.2d 57, 58–59 (Mo. banc 1995) (citations omitted)). A claim accrues when one "has some notice of his cause of action, an awareness either that he has suffered an injury or that another person has committed a legal wrong which ultimately may result in harm to him." *Myers v. Clayco State Bank,* 687 S.W.2d 256, 263 (Mo.App.1985)(quoting *Krug v. Sterling Drug, Inc.,* 416 S.W.2d 143, 150 (Mo.1967)).

Therefore, we must determine whether the claimed damages, as a result of the alleged breach of fiduciary duty and breach of contract, were sustained and capable of ascertainment within five years prior to the filing of U.S. Title's counterclaim and third party petition on August 16, 1995. Both the breach of fiduciary duty claim and breach of contract claim stem from CTC's and Davis's alleged concealment of the personal property lease. U.S. Title contends that the earliest date when damages could have been discovered was May 24, 1993, the date in which the existence of the lease became known to the other directors and shareholders of CTCSL. U.S. Title contends this is the date when the action for breach of fiduciary duty and for breach of contract accrued.

CTC, however, contends that any damage resulting from both the breach of fiduciary duty claim and the breach of contract claim was capable of ascertainment on May 23, 1983, when CTC and CTCSL entered into the stock purchase agreement. Since paragraph 9.2 of the stock purchase agreement[4] expressly stated that CTC and CTCSL were to enter into a personal property lease, and that the stock purchase agreement specifically referenced and incorporated the lease as Exhibit B, the directors of CTCSL had constructive notice of the personal property lease.

■ U.S. Title's counterclaim and third party petition, however, did not allege that the personal property lease was attached as an exhibit to the stock purchase agreement. In fact, the stock purchase agreement attached to the counterclaim and third party petition (Exhibit A), did not contain the exhibit. In contrast to CTC's and Davis's claim that U.S. Title had constructive notice from the stock purchase agreement and the attached lease, U.S. Title repeatedly alleged throughout its counterclaim and third party petition that Davis and CTC concealed the personal property lease. In light of these allegations, we find that U.S. Title's counterclaim and third party petition does not irrefutably establish that any damage resulting from the breach of fiduciary duty and breach of contract claims was both sustained and capable of ascertainment more than five years before the action was filed. Accordingly, it was error for the trial court to dismiss U.S. Title's claims for breach of fiduciary duty and breach of contract based upon statute of limitations.

■ CTC also argues that the trial court's dismissal of U.S. Title's counterclaim and third party petition should be upheld on the alternative ground it asserted in its motion to dismiss. CTC asserts that no assignment was made of any choses-in-action for breach of contract or tort by CTCSL to U.S. Title because the asset purchase agreement did not clearly and unconditionally transfer any choses-in-action. CTC argues that no choses-in-action could have been assigned un-

der the asset purchase agreement because the assets were to be set out in future agreements. CTC appears to argue that since the asset purchase agreement attached to the counterclaim and third party petition did not specifically refer to an assignment of any choses-in-action, U.S. Title was not assigned the choses-in-action. However, U.S. Title did not allege that the asset purchase agreement constituted an assignment of CTCSL's choses-in-action; instead it alleged that CTCSL's choses-in-action were assigned pursuant to the asset purchase agreement. The asset purchase agreement provided that CTCSL would deliver to U.S. Title by closing an assignment of the intangible assets. Giving U.S. Title's allegation its broadest intendment, U.S. Title alleged that CTCSL, subsequently and in accordance with the asset purchase agreement assigned its choses-in-action to U.S. Title. Although CTC may contest whether CTCSL actually assigned its choses-in-action to U.S. Title, for purposes of appeal, we must treat the factual allegation as true.

In their motion to dismiss, CTC and Davis also pointed to an assignment and assumption agreement allegedly entered into by CTCSL and U.S. Title on May 24, 1993. In their motion to dismiss, CTC and Davis asserted that the assignment and assumption agreement neither identified nor assigned any choses-of-action, and therefore, U.S. Title was never assigned CTCSL's choses-in-action. The assignment and assumption agreement, however, was not attached to U.S. Title's counterclaim and third party petition. If the motion to dismiss is based on allegations that require the trial court to consider matters outside the petition, then those particular allegations will not be considered on appeal because they are improper grounds for a motion to dismiss under Rule 55.27(a). *State ex rel. Riederer v. Collins,* 799 S.W.2d 644, 648 (Mo.App.1990). Thus, since CTC's and Davis's allegation that the assignment and assumption agreement failed to assign CTCSL's choses-in-action to U.S. Title concerns matters which would have necessitated the trial court's consideration of matters outside the pleadings, it would have

---

4.  As previously stated, the stock purchase agreement was attached to U.S. Title's counterclaim as EXHIBIT A. An attached exhibit becomes part of

a petition for all purposes. Rule 55.12; *Gould v. Missouri State Board of Registration for Healing Arts,* 841 S.W.2d 288, 290 (Mo.App.1992).

been improper for the trial court to have sustained the motion to dismiss on this ground. *See, Terre Du Lac Ass'n v. Terre Du Lac, Inc.,* 737 S.W.2d 206, 216 (Mo.App. 1987); *Ebling v. Hardesty,* 354 S.W.2d 348, 350 (Mo.App.1962)(if contentions cannot be substantiated by looking at the petition, then motion to dismiss should not be granted).

We must reverse the trial court's dismissal of U.S. Title's counterclaim and third party petition because the face of the counterclaim and third party petition does not irrefutably establish that U.S. Title's claims were barred by limitations. However, there may be facts which establish that U.S. Title's claims are barred by the statute of limitations, but these facts are not borne out by the face of the counterclaim and third party petition. If such facts should be developed, the limitations defense may be raised at trial or by a motion for summary judgment. *See, Heintz,* 922 S.W.2d at 776.

The judgment dismissing U.S. Title's claims is reversed and the case remanded with directions to reinstate U.S. Title's counterclaim and third party petition.

CRANE, P.J., and JAMES R. DOWD, J., concur.