145 F.Supp.2d 1096 (2001)
Daniel RADEMEYER, Plaintiff,
v.
Michael R. FARRIS, Defendant.
No. 4:99CV1770SNL.
United States District Court, E.D. Missouri, Eastern Division.
May 14, 2001.
*1097 *1098 *1099 Robert J. Selsor, Lisa S. Leary, Suelthaus and Walsh, Clayton, MO, for Daniel Rademeyer, plaintiff.
Timothy A. Hausman, Attorney General of Missouri, Assistant Attorney General, Jefferson City, MO, for State of Missouri, intervenor.
Mark J. Bremer, John Gianoulakis, Robert F. Murray, Kohn and Shands, St. Louis, MO, Stephen H. Rovak, Sonnenschein and Nath, St. Louis, MO, for Michael R. Farris, defendant.

MEMORANDUM OPINION
LIMBAUGH, Senior District Judge.
This matter is before the Court on defendant's motion for summary judgment (# 18) filed December 5, 2001.[1] Plaintiff alleges fraud and breach of fiduciary duty against defendant in connection with defendant's buy-out of the minority shareholders of MRF, Inc. Defendant argues plaintiff's claims are time barred, because the statute of limitations for both fraud and breach of fiduciary duty is five years and both causes of action accrued in early to mid-1994. Plaintiff argues that the causes of action did not accrue until 1997. In addition, plaintiff argues that the statute of limitations is tolled because 1) defendant actively concealed his fraudulent activity; and 2) because defendant moved to Florida in 1998. Defendant, in turn challenges the constitutionality of Mo.Rev. Stat. § 516.200 which tolls the statute of limitations when a defendant departs from and resides outside of Missouri. The Attorney General of Missouri has chosen to intervene pursuant to 28 U.S.C. § 2403(b), because a Missouri statute has been constitutionally challenged.
As an initial matter, the State of Missouri requests that the Court allow it to conduct discovery prior to adjudication of the constitutional issue. However, the Court fails to see what relevant information the State could discover that has not already been presented under the uncontroverted facts. Defendant attacks the constitutionality of § 516.200 on its face, and therefore, a fact-specific inquiry is not necessary.

*1100 Summary Judgment Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). However, summary judgment motions "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop., Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all the information before the court demonstrates that "there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976).
Pursuant to local rule 4.01(E), a memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party. Most of defendant's statements were not controverted, and those that were, were not directly controverted, but rather plaintiff offered explanations. Therefore, the Court will consider all of the facts presented in defendant's statement. It will also consider plaintiff's explanations since defendant, in its reply memorandum, did not object.

Background
In 1990, defendant Farris, along with a group of investors including Rademeyer, formed a company named MRF, Inc., which is also known as the Farris Group. Defendant owned 51% of the common stock of MRF, while plaintiff owned 6.95% or 695 of the 10,000 outstanding shares of common stock in the company. In early 1993, there were discussions between Farris and MRF's minority shareholders regarding the possibility of Farris purchasing the shares of the minority shareholders. Farris and the minority shareholders agreed on a sale price and on June 25, 1993, the parties closed on their Stock Redemption Agreement whereby plaintiff's and the other minority shareholder's shares were redeemed by MRF.
*1101 Plaintiff alleges in his cause of action that Farris concealed the true value of MRF at the time of the minority shareholder stock sale in June 1993. He also alleges that Farris failed to disclose that he was engaged in negotiations with LaserSight, Inc. and Healthsource, Inc. to sell the company for a higher per share price than Rademeyer and the other minority shareholders ultimately received for their shares.
In February 1994, defendant sold all of the outstanding capital stock of MRF to LaserSight, Inc. "In early 1994," Tim Shapiro, a former minority shareholder in MRF, told Rademeyer that "The Farris Group [had] been sold to LaserSight" and that "Mike [Farris] came out pretty good on it." Plaintiff also learned that the company had been sold in early 1994 because he was paid in full on the Promissory Note for his MRF stock around that time. He knew that the cash "came to Mike Farris as part of the closing in early 1994 on the sale of MRF, Inc. stock to LaserSight." Plaintiff knew in early 1994 that LaserSight was a publicly held company, and plaintiff believes that he checked the price of the stock of LaserSight in early 1994. Plaintiff did not attempt to access any Securities Exchange Commission filings or the Missouri Secretary of State or Florida Secretary of State filings to determine the precise terms of the sale of MRF to LaserSight, even though he "probably" knew that he could have at the time. Plaintiff is an experienced accountant and identifies himself as an "expert on the value of closely held corporations."
At some point between June 1994 and September 1994, John Brandvein, another former minority shareholder of the Farris Group, informed plaintiff that he was considering a claim against Farris. Brandvein told plaintiff that "he knew that MRF had sold its stock to LaserSight." He also told him that "he didn't think he had been treated fairly" in his sale of his MRF stock which closed on June 25, 1993; and that he thought he had "a very good case." However, Brandvein did not give any details or explain why he felt that way, and Rademeyer did not ask Brandvein why he thought he had a "very good case." Brandvein offered no specifics as to why he thought he had a valid claim against Farris other than that Farris had sold the company a number of months after buying out the minority shareholders for a higher price. Brandvein "tried to enlist [Rademeyer] into joining into the suit with him at that stage." In his deposition, plaintiff said that he told Brandvein that he decided not to pursue a lawsuit against Farris because he was "more interested in getting [his] career back on track." In Rademeyer's affidavit he states that the main reason he was not interested in joining into a proposed lawsuit was that Mr. Brandvein offered him no concrete explanation as to why the minority shareholders had been wronged.
Plaintiff claims that it was not until he was deposed as a witness in the Brandvein litigation in 1997, that he learned there had been discussions between LaserSight and the Farris Group prior to the purchase of his shares in June 1993. It was at this time that he saw the Letter of Intent dated June 14, 1993. Defendant moved from the State of Missouri and changed his residence to Florida in February of 1998, to continue as CEO of LaserSight. LaserSight had sold a subsidiary company and the only operating division left was in Orange County, Florida.
On November 12, 1999, plaintiff filed the instant cause of action. The fact that LaserSight's stock price was up to $16.50 per share in the late fall of 1999 was "a factor in [Rademeyer's] decision to file suit" when he did.

*1102 Discussion

Under Missouri law, the applicable statute of limitations for common law fraud and breach of fiduciary duty is five years. Mo.Rev.Stat. § 516.120(5); § 516.120(4); see also Klemme v. Best, 941 S.W.2d 493, 497 (Mo.1997). However, if a defendant prevents the commencement of an action by any improper act, the limitation is tolled. Mo.Rev.Stat. § 516.280. In addition, if a defendant departs from and resides outside of the state of Missouri, the time of his absence from the state shall not be deemed or taken as any part of the time limited for the commencement of such action. Mo.Rev.Stat. § 516.200. Therefore, the first issue in this motion is when did these causes of action begin to accrue. If they began to accrue prior to November 11, 1994, the second issue is whether or not the statute of limitations is tolled.

I. Time of Accrual of Plaintiff's Claims

A. Common Law Fraud Claim
A cause of action for fraud accrues for limitations purposes when the plaintiff has sufficient facts to inform a reasonable person that a fraud has been committed. Koester v. American Republic Invs. Inc., 11 F.3d 818, 821 (8th Cir.1993) (applying Missouri law); Vogel v. A.G. Edwards & Sons, Inc., 801 S.W.2d 746, 750 (Mo.Ct.App.1990). In a fraud claim, the statute of limitations begins to run when the plaintiff discovers, "or in the exercise of due diligence, should have discovered the fraud." Community Title Co. v. U.S. Title Guar. Co., Inc., 965 S.W.2d 245, 252 (Mo.Ct.App.1998). The plaintiff maintains the duty to make inquiry to discover the facts surrounding the fraud, and therefore, if the means of discovery exist, the plaintiff will be deemed to know of the fraud so as to begin the running of the statute of limitations. Id.; Gilmore v. Chicago Title Ins. Co., 926 S.W.2d 695, 698 (Mo.Ct.App. 1996).
If a fiduciary relationship exists, however, a different standard is used. When there is a fiduciary relationship, only actual discovery of the fraud begins the period of limitations. Community Title, 965 S.W.2d at 252. Because a fiduciary relationship creates a false sense of security, only actual discovery of the fraud begins the period of limitations. Id. Plaintiff argues that the "actual discovery" standard should be used in this cause of action, because Farris, as an officer, director and majority shareholder of the Farris Group, was the fiduciary of the company's minority shareholders, including the plaintiff.
Although a fiduciary relationship might have existed between Farris and Rademeyer at one time, that relationship ended on June 25, 1993, when Rademeyer sold his shares to Farris. Plaintiff argues that the termination of a fiduciary relationship has no effect on the "actual discovery" rule. However, the rule exists because the fiduciary relationship creates a false sense of security. When that relationship ends, plaintiff should no longer have a false sense of security. There was no fiduciary relationship between Farris and Rademeyer at the time plaintiff learned of certain relevant facts. Therefore, the Court will not apply the "actual discovery" standard, but rather examine at what time plaintiff learned of enough facts which would lead a reasonable person to believe that a fraud had been committed.
Plaintiff knew that Farris sold the Company to LaserSight in early 1994, less than a year after the minority shareholders redeemed their shares. He was also told that Farris "came out pretty good" in the deal, and he understood that to mean that he made a better profit than was made on the sale of the minority shareholders' *1103 stock. He knew that LaserSight was a publicly held company, and he even checked the price of the stock of LaserSight in early 1994. He admitted that he "probably" knew that he could have discovered the terms of the sale between Farris and LaserSight by accessing Securities Exchange Commission filings or the Missouri Secretary of State or Florida Secretary of State filings, but that he did not attempt to do so. Although Rademeyer did not know the terms of the sale, he did know that Farris received at least $135,000 in cash at closing, because Rademeyer and the other minority shareholders got paid in full on their Promissory Notes for their MRF stock.
Then sometime between June and September 1994, John Brandvein, another minority shareholder contacted plaintiff. Brandvein told Rademeyer that he did not think they had been treated fairly in the sale of their stock to Farris. Brandvein told Rademeyer that he thought he had "a very good case" against Farris, and he tried to get Rademeyer to join in on the case against Farris. Rademeyer did not ask Brandvein about the terms of the sale between Farris and LaserSight. He did not ask him why he thought he had "a very good case." In fact, he made no inquiries at all. He did not go to Farris and ask about the terms of the sale to LaserSight, nor did he check any public sources. Rademeyer's main reason for not joining Brandvein was because Brandvein offered "no concrete explanation as to why the minority shareholders had been wrong." Affidavit of Rademeyer, ¶ 5. However, Rademeyer admits that he did not ask Brandvein for an explanation. Rademeyer Depo., 217.
If Rademeyer had exercised due diligence, he would have discovered that the sale of Farris Group to LaserSight was a multi-million dollar deal. See Community Title, 965 S.W.2d at 252. There were facts known by plaintiff prior to November 11, 1994, which would have caused a reasonably prudent person to suspect that fraud might exist, and plaintiff did have the means to discover the fraud prior to November 11, 1994. See Community Title, 965 S.W.2d at 252. He could have made inquiries of Brandvein, who was in the same position as plaintiff, and who believed he had a very good claim against Farris. Plaintiff could have accessed public filings regarding the terms of the sale between Farris and LaserSight. Rademeyer had a duty to make inquiry to discover the facts surrounding the fraud. See Gilmore, 926 S.W.2d at 699. If he had accessed any of the public filings, he would have discovered that his shares were worth $602,000 more than what he sold them for in June 1993. This information would have informed a reasonable person that some type of fraud had occurred. If Rademeyer had questioned Brandvein on why he thought he had a "very good case," plaintiff might have learned that Farris was working on a multi-million dollar sale with other companies prior to the June 1993 sale. If the means of discovery exist, the plaintiff will be deemed to know of the fraud so as to begin the running of the statute of limitations. Id. Rademeyer had a duty to make inquiry to discover the facts surrounding the fraud, and if he had made some basic inquiries, he would have learned of the fraud. Therefore, the fraud claim accrued in at least September of 1994, and plaintiff's claim is time-barred unless § 516.280 or § 516.200 tolls the statute of limitations.

B. Breach of Fiduciary Duty Claim
In a breach of fiduciary duty claim, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of *1104 ascertainment. Mo.Rev.Stat. § 516.100; Koester, 11 F.3d at 821. The "capable of ascertainment" standard is objective. See Klemme v. Best, 941 S.W.2d 493, 497 (Mo. 1997). Damage is ascertainable when the fact of damage can be discovered or made known, not when the plaintiff actually discovers injury or wrongful conduct. Id. A claim accrues when one has some notice of his cause of action, an awareness either that he has suffered an injury or that another person has committed a legal wrong which ultimately may result in harm to him. Community Title, 965 S.W.2d at 253. All possible damages do not have to be known, or even knowable, before the statute accrues. Klemme, 941 S.W.2d at 497.
Plaintiff admits that "the damage resulting from the Defendant's breach of fiduciary duty was sustained when the Farris Group was sold in February 1994." He goes on to say, however, that "because the Plaintiff was unaware of the Defendant's misconduct ... he had no idea that this loss constituted `damage'." Plaintiff's Memorandum in Opposition, 11. However, plaintiff does not need to be aware of defendant's specific misconduct for his cause of action to accrue. The law specifically states that damage is ascertainable when the damage can be discovered, not when the plaintiff actually discovers the wrongful conduct. Klemme, 941 S.W.2d at 497. He sustained damage and that damage was ascertainable at the time Farris sold to LaserSight. If plaintiff had looked up the terms of the sale, he would have been put on notice that the true value of MRF at the time of the minority shareholder stock sale in June 1993 was much higher than Farris had led them to believe. Therefore, in the claim for breach of fiduciary duty, the statute of limitations began running in February of 1994, and the claim is time-barred unless the time is tolled.

II. Tolling of the Statute of Limitations

A. Concealment of Fraudulent Activity
Section 516.280 states the following:
If any person, by ... improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented.
Mo.Rev.Stat. § 516.280. Fraudulent concealment of a cause of action may toll a statute of limitations. M & D Enters., Inc. v. Wolff, 923 S.W.2d 389, 400 (Mo.Ct. App.1996). Plaintiff lists in his Memorandum additional facts not listed in the statement of uncontroverted facts, which he argues establishes fraudulent concealment by Farris.[2] However, even if plaintiff can establish that Farris fraudulently concealed the cause of action, the statute of limitations cannot be tolled.
Fraudulent concealment does not toll the statute of limitations for fraud. Cullom v. Crittenton, 959 S.W.2d 915, 919 (Mo.Ct.App.1998); Gilmore v. Chicago Title Ins. Co., 926 S.W.2d 695, 699 (Mo.Ct. App.1996); Kueneke v. Jeggle, 658 S.W.2d 516, 519 (Mo.Ct.App.1983) (§ 516.280 does not apply to toll the statute of limitations for fraud). Therefore, plaintiff's fraud claim cannot be tolled under § 516.280. Fraudulent concealment is also inapplicable if a plaintiff knows or should have *1105 known he had a cause of action. M & D Enters., Inc., 923 S.W.2d at 400. There can be no concealment which will prevent the running of the statute of limitations where the cause of action is known to the plaintiff or there is a presumption of such knowledge. Hasenyager v. Board of Police Comm'rs of K.C., 606 S.W.2d 468, 471 (Mo.App.1980). The Court has already held that plaintiff's cause of action for breach of fiduciary duty was "capable of ascertainment" in February 1994, and therefore, § 516.280 does not apply to toll the statute of limitations.

B. Defendant's Departure from Missouri
Section 516.200 states the following:
[I]f after such cause of action shall have accrued, such person depart from and reside out of this state, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action.
Mo.Rev.Stat. § 516.200. The Missouri Supreme Court has held that the tolling provisions of § 516.200 are clear, unequivocal, and free of ambiguity, and they should be given a literal interpretation. Poling v. Moitra, 717 S.W.2d 520, 522 (Mo.1986). It declined to interpret the tolling statute to apply only when the state courts did not have jurisdiction pursuant to the long-arm statute. Id. at 521-22. It is well established that a federal court, interpreting a state statute, must follow the interpretation given it by the highest court of that state. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
Defendant, however, urges us not to follow the holding in Poling, because it applies § 516.200 in an unconstitutional manner by violating the Commerce Clause of the United States Constitution (Art. I, § 8, cl.3). The United States Supreme Court evaluated the constitutionality of an Ohio tolling statute which is very similar in language to § 516.200.[3]Bendix Autolite Corp. v. Midwesco Enters. Inc., 486 U.S. 888, 108 S.Ct. 2218, 100 L.Ed.2d 896 (1988). It held that the burden imposed on interstate commerce by the tolling statute exceeded any local interest that the state might advance. Id. at 891, 108 S.Ct. at 2221. Although in Bendix Autolite the defendant was a corporation, the Supreme Court's reasoning would also apply to an individual defendant.[4]
"Where a State denies ordinary legal defenses or like privileges to out-of-state persons or corporations engaged in commerce, the state law will be reviewed under the Commerce Clause to determine whether the denial is discriminatory on its face or an impermissible burden on commerce." Id. at 893, 108 S.Ct. at 2222. Section 516.200 denies the statute of limitations defense to those defendants who have moved from Missouri, even if the move was in the course of employment, such as Farris' move. The Bendix Court held that Ohio could not justify its statute as a means of protecting its residents from corporations who become liable for acts done within the State but later withdraw from the jurisdiction, because the Ohio long-arm statute would have permitted service on the defendant throughout the period of limitations. Id. at 894, 108 S.Ct. *1106 at 2222. For the same reason, Missouri cannot justify its statute, because the statute is applicable when the State has long-arm jurisdiction over the defendant.[5] The Bendix Court held that the Ohio statutory scheme forces a foreign corporation to choose between exposure to the general jurisdiction of Ohio courts or forfeiture of the limitations defense. Id. at 893, 108 S.Ct. at 2221. This rationale would also apply to individual defendants. The individual is forced to either continue residing in the state or to forfeit the limitations defense. For the same reasoning found in Bendix, the Court finds that § 516.200 burdens interstate commerce, and is therefore, unconstitutional.
The State argues, however, that it is unnecessary for the Court to rule on the constitutionality of § 516.200. The State urges the Court to anticipate how the Missouri Supreme Court, in 2001, would apply § 516.200 in light of the Bendix decision. It argues the following: "It stands to reason that the Missouri Supreme Court, in 2001, with new judges, would validate RSMo. § 516.200 by incorporating the long-arm statutes into the tolling provision." The Court has two problems with this approach. First, if the Court interpreted § 516.200 as incorporating the long-arm statute, the Missouri Supreme Court would not be bound by the Court's interpretation. Capitol Indem. Corp. v. Haverfield, 218 F.3d 872 (8th Cir.2000). In other words, it would be free to disregard the Court's interpretation and continue to interpret the statute in an unconstitutional manner.
The second, and more important problem, is that the Court does not have the authority to rewrite the statute, and that is essentially what it would be doing. The Missouri Supreme Court said it best in Poling when it declined to incorporate the long-arm statute in its interpretation of § 518.200:
The statute admits of no exception and the Court should not engraft one by judicial legislation. If the legislature intended to make the statute impotent in cases where an absent defendant can be sued via the long-arm statute, it could have expressly done so. For the Court to so construe § 516.200 would be plain judicial legislation. Amendment of the statute should be left to the General Assembly.
If the Court chose to incorporate the long-arm statute into its interpretation of § 516.200, it would be overreaching its authority. The statute, as written, is unconstitutional, and it is the Missouri legislature's responsibility to rewrite the statute in a constitutional manner, if it so chooses.

Conclusion
Radameyer had sufficient facts before November 1994 that a fraud had been committed. He had a duty to make inquiry to discover the facts surrounding the fraud, and if he had made some basic inquiries, he would have learned of the fraud. In the breach of fiduciary duty claim, the damage was ascertainable when Farris sold the company to LaserSight for millions of dollars. If Rademeyer had looked up the publicly known terms of the sale, he would have been put on notice that his shares were worth $602,000 more than what Farris had led him to believe.
Although fraudulent concealment of a cause of action tolls a statute of limitations for most claims, it does not toll the time period for claims of fraud. Fraudulent *1107 concealment is also inapplicable if a plaintiff should have known he had a cause of action. Since, Rademeyer should have known he had a cause of action before November 1994, the statute of limitations cannot be tolled. Nor can the statute of limitations be tolled because Farris left the state of Missouri. Section 516.200, which tolls the statute of limitations when a defendant departs from Missouri, is unconstitutional under the Commerce Clause.

ORDER
Pursuant to the memorandum opinion entered this day,
IT IS HEREBY ORDERED that defendant's motion for summary judgment (# 18) is GRANTED.
IT IS FURTHER ORDERED that this cause of action is dismissed with prejudice.
NOTES
[1] Defendant filed Notice of motion for summary judgment on December 5, 2000, but pursuant to local rule 4.01 the parties do not file their substantive memorandums at that time. The Court actually received the motion and accompanying memorandums on January 25, 2001, and following local rules, the motion is backdated to the date when the Notice was filed.
[2] These include allegations that the Farris Group's attorney was aware of the negotiations between the company and LaserSight prior to June 1993, and that the attorney was not going to disclose this information to the minority shareholders. It also includes allegations that defendant's brother learned of the pending sale to LaserSight, and was paid $40,000 for not disclosing to anyone his knowledge of the sale.
[3] The Ohio statute stated that "[a]fter the cause of action accrues if [defendant] departs from the state, absconds, or conceals himself, the time of his absence or concealment shall not be computed as any part of a period within which the action must be brought."
[4] It should be noted that an Ohio district court subsequently applied the Bendix decision and reasoning to the tolling statutes' application to individual defendants. Tesar v. Hallas, 738 F.Supp. 240 (N.D.Ohio 1990).
[5] It should be noted that the Missouri Supreme Court stated in Poling that interpreting § 516.200 as not applying when the absent defendant can be served would essentially repeal that section because of the broad reach of Missouri's long-arm statute. 717 S.W.2d 520, 522.