

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| KENNY S. THOMAS, ET AL., | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | WD78122 |
| | ) | |
| GRANT THORNTON LLP, | ) | Opinion filed:  October 6, 2015 |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**THE HONORABLE S. MARGENE BURNETT, JUDGE**

Before Division Two:  Thomas H. Newton, Presiding Judge,
Victor C. Howard, Judge and Mark D. Pfeiffer, Judge

Kenny and Eileen Thomas and Kelly and Mandy Thomas (collectively "the Thomases") appeal the judgment of the trial court dismissing their claims for fraudulent and negligent misrepresentation, breach of fiduciary duty, and professional negligence against Grant Thornton LLP as time-barred by the Kansas two-year statute of limitations, K.S.A. §§ 60-513(a)(3) & (4)(2005).  The Thomases contend that the trial court erred in dismissing their petition because their claims accrued in Missouri in February 2009 and, due to a series of tolling agreements executed by the parties, were not time-barred under Missouri's five-year statute of limitations for general torts and fraud, § 516.120, RSMo 2000, when they filed their petition in June 2014.  The judgment is affirmed.

## Factual and Procedural Background

The facts relevant to the question of whether the statute of limitations bars the Thomases' claims against Grant Thornton are uncontested. In their petition for damages, the Thomases alleged that Grant Thornton, a national accounting firm, promoted and sold to them through a former partner in its tax practice group, Allen Davison, several abusive tax shelter schemes resulting in significant financial damages including fees expended in purchasing the abusive schemes, penalties and interest assessed by state and federal tax authorities, loss of deductions, and professional fees incurred. In particular, the petition alleged that Kenny Thomas and his son, Kelly Thomas, own an automobile dealership in Kansas called Olathe Toyota. They and their wives, Eileen and Mandy Thomas, are all residents of Kansas. Mr. Davison, a CPA and attorney, sold the Thomases three tax arrangements: a multiple entity structure (parallel corporation arrangement), an ESOP-S corporation arrangement, and a Roth IRA-C arrangement. Several entities owned by Kenny and Kelly Thomas, individually or collectively, were created as part of the tax arrangements to be management companies purportedly providing services to Olathe Toyota. Olathe Toyota took substantial expenses deductions for purported fees paid to the various entities for management/consulting services for tax years 2002, 2003, and 2004 resulting in reduced or deferred tax liabilities in those years.

In August and September 2006, the Internal Revenue Service issued notices of deficiency to the Thomases, two of the Roth IRA-C entities, and one of the ESOP-S corporation entities for tax years 2002, 2003, and 2004. The notices of deficiency reflected the IRS's rejection of the tax strategies sold to them by Grant Thornton and assessed back taxes and penalties for those tax years. The Thomases and their affiliated entities contested the deficiencies in United States Tax Court. Mr. Davison, who resigned from Grant Thornton in 2001, continued to represent the

Thomases in his capacity as attorney and tax advisor in the tax court proceedings and continued to reassure them that the tax arrangements were legitimate tax avoidance transactions. After several years of litigation, the Thomases and their affiliated entities reached a settlement of their tax court cases in February 2009 agreeing to pay substantial back taxes, interest, and penalties.

The Thomases filed their four-count petition against Grant Thornton on June 10, 2014, seeking damages for fraudulent and negligent misrepresentation, breach of fiduciary duty, and professional negligence. Grant Thornton filed a motion to dismiss asserting that the Thomases' claims were barred by the Kansas two-year statute of limitations through the application of Missouri's borrowing statute, section 516.190, RSMo 2000.

In their suggestions in opposition to the motion to dismiss, the Thomases argued that their action was timely filed within the Missouri five-year statute of limitations because the claims accrued in February 2009 in Missouri when the U.S. Tax Court decision imposed penalties and interest against the Thomases and because the parties had entered into a series of tolling agreements beginning in 2011. The first tolling agreement between the parties was effective on September 1, 2011, and ran through December 30, 2011. The second agreement, effective on March 2, 2012, ran through September 2, 2013. The third and final agreement was effective on September 16, 2013, and ran through May 30, 2014. All three agreements contained the following provision:

> This Agreement effects a tolling and suspension of the statute of limitations only on claims for which the statute of limitations has not already expired as of the Effective Date of this Agreement. This Agreement has no effect on any claims that were barred as of the Effective Date, and does not operate to revive any such claims.

The trial court granted the motion to dismiss and entered judgment for Grant Thornton finding that the Thomases' claims originated in 2006 in Kansas and were barred by the Kansas

two-year statute of limitations made applicable by the Missouri borrowing statute. This appeal by the Thomases followed.

## Standard of Review

Generally, review of a trial court's motion to dismiss is limited to the sufficiency of the pleadings on their face. *City of North Kansas City v. K.C. Beaton Holding Co., LLC,* 417 S.W.3d 825, 830 (Mo. App. W.D. 2014). Where, as here, both parties introduce evidence beyond the pleadings, a motion to dismiss is converted to a motion for summary judgment, and the parties are charged with knowledge that the motion was so converted. *Id.*; *Mitchell v. McEvoy*, 237 S.W.3d 257, 259 (Mo. App. E.D. 2007). Nonetheless, "[w]hen relevant facts are uncontested, the question of whether a statute of limitations bars an action can be decided by a court as a matter of law." *Rolwing v. Nestle Holdings, Inc.*, 437 S.W.3d 180, 182 (Mo. banc 2014)(citing *State ex rel. Marianist Province of U.S. v. Ross*, 258 S.W.3d 809, 811 (Mo. banc 2008)).

## Discussion

"In ruling on statutes of limitations issues, the law of the forum state is applied." *Alvarado v. H&R Block, Inc.*, 24 S.W.3d 236, 241 (Mo. App. W.D. 2000). In Missouri, the statute of limitations for fraud, negligent misrepresentation, breach of fiduciary duty, and professional negligence is five years. § 516.120(4) & (5). However, when a cause of action "originates" in another state, the foreign state's statute of limitations become applicable through Missouri's borrowing statute, section 516.190. *Ferrellgas, Inc. v. Edward A. Smith, P.C.*, 190 S.W.3d 615, 620 (Mo. App. W.D. 2006); *Alvarado*, 24 S.W.3d at 241-42. Section 516.190 provides, "Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon,

4

brought in any of the courts of this state." Accordingly, if the foreign state's statute of limitations bars an action, Missouri's borrowing statute acts to bar the action in Missouri as well. *Ferrellgas*, 190 S.W.3d at 620; *Alvarado*, 24 S.W.3d at 242.

The term "originated" as used in Missouri's borrowing statute is synonymous with the term "accrued." *Ferrellgas*, 190 S.W.3d at 620 (citing *Thompson v. Crawford*, 833 S.W.2d 868, 871 (Mo. banc 1992)); *Alvarado*, 24 S.W.3d at 242. Section 516.100 directs when a cause of action accrues: "for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment…." Damage is sustained and capable of ascertainment when it can be discovered or made known, not when the plaintiff actually discovers injury or wrongful conduct, and even if the extent of the damage remains unknown. *Ferrellgas*, 190 S.W.3d at 620; *Day v. deVries & Assocs., P.C.*, 98 S.W.3d 92, 96 (Mo. App. W.D. 2003); *Alvarado*, 24 S.W.3d at 242. "Whether damages are capable of ascertainment is an objective test, ordinarily decided as a matter of law." *Ferrellgas*, 190 S.W.3d at 620. The question is whether damages were capable of ascertainment by a reasonable person using reasonable diligence. *Id.*

Section 516.100 not only determines when a cause of action accrues but also where it accrues for the purpose of applying the borrowing statute. *Ferrellgas*, 190 S.W.3d at 620; *Day*, 98 S.W.3d at 95; *Alvarado*, 24 S.W.3d at 242. "'A cause of action accrues when and originates where damages are sustained and are capable of ascertainment.'" *Day*, 98 S.W.3d at 95-96 (quoting *Elmore v. Owens-Illinois, Inc.*, 673 S.W.2d 434, 436 (Mo. banc 1984)).

While section 516.100 governs when negligence and breach of fiduciary duty causes of action originate or accrue, section 516.120(5) determines when a cause of action for fraud

5

accrues. *Schwartz v. Lawson*, 797 S.W.2d 828, 832 (Mo. App. W.D. 1990). "[A]n action for fraud accrues not when the damage occurs or can be ascertained, but when 'facts constituting the fraud are discovered.'" *Cmty. Title Co. v. U.S. Title Guar. Co., Inc.*, 965 S.W.2d 245, 252 (Mo. App. E.D. 1998)(quoting *Schwartz,* 797 S.W.2d at 832). Specifically, section 516.120(5) provides that for an action for relief on the ground of fraud, the cause of action is "deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud." "A cause of action for fraud accrues at the time the defrauded party discovered or in the exercise of due diligence should have discovered the fraud." *Larabee v. Eichler*, 271 S.W.3d 542, 546 (Mo. banc 2008)(internal quotes and citation omitted). The plaintiff has a duty to make inquiry to discover facts surrounding the fraud, and the plaintiff is deemed to know of the fraud when plaintiff possesses the means of discovery. *Olean Assocs., Inc. v. Knights of Columbus*, 5 S.W.3d 518, 522 (Mo. App. E.D. 1999); *Cmty. Title*, 965 S.W.2d at 252. When a fiduciary relationship exists, however, only the actual discovery of the fraud serves to begin the limitations period. *Cmty. Title*, 965 S.W.2d at 252.

In the context of causes of action in negligence arising out of errant tax advice, Missouri courts have held that the claim accrued and the statute of limitations commenced to run on the date the IRS issued and the taxpayer received notices advising of deficiencies. *Alvarado*, 24 S.W.3d at 242-43; *Brower v. Davidson, Deckert, Schutter & Glassman, P.C.*, 686 S.W.2d 1, 3-4 (Mo. App. W.D. 1984). In *Brower*, plaintiffs brought a negligence claim against attorneys and an accountant based on failure to complete within twelve months the distribution to stockholders of assets of a liquidating corporation. 686 S.W.2d at 1-2. This court affirmed summary judgment for the defendants on statute of limitations grounds holding that the plaintiff's damage

6

was capable of ascertainment and the statute of limitations commenced to run on the date of the IRS report calculating a tax deficiency based upon the failure. *Id.* at 2-3. It explained:

> From that point on, plaintiffs can scarcely claim that they did not know that they were exposed to a substantial tax liability by reason of the failure to complete the distribution of the corporate assets [within twelve months]….The 'discoverability' of the fact of damage…could no longer be an open question. It was not only 'discoverable;' it was discovered.
>
> *Id.* at 3.

Similarly, in *Alvarado*, this court held that plaintiffs' accounting malpractice (negligence) claim against H&R Block arising out of income tax return preparation services was barred by California's two-year statute of limitations as applied by the Missouri borrowing statute. 24 S.W.3d at 241-43. It explained that the cause of action accrued when and where the plaintiffs ascertained that they had sustained damages in the form of assessed penalties by the IRS pertaining to the preparation of their income taxes. *Id.* at 242. That occurred when they received the IRS notices of deficiency while living in California. *Id.* at 242-43. The rulings in *Brower* and *Alvarado* are consistent with authority from other jurisdictions, which hold that the statute of limitations on negligence claims begins to run when the IRS issues notices of deficiency assessment. *See e.g. Thomas v. Cleary*, 768 P.2d 1090, 1093-94 (Alaska 1989); *Int'l Engine Parts, Inc. v. Feddersen & Co.*, 888 P.2d 1279, 1288 (Cal. 1995); *Feldman v. Granger*, 257 A.2d 421, 425 (Md. 1969); *Chisholm v. Scott*, 526 P.2d 1300, 1302 (N.M. Ct. App. 1974); *Hoover v. Gregory*, 835 S.W.2d 668, 672 (Tex. App. 1992). *But see Peat, Marwick, Mitchell & Co. v. Lane*, 565 So.2d 1323, 1326-27 (Fla. 1990), and *Clark v. Deloitte & Touche LLP*, 34 P.3d 209, 216-17 (Utah 2001)(statute of limitations begins to run when Tax Court renders decision assessing deficiency).

The Thomases argue that their claims accrued in February 2009 when the Tax Court approved their settlement of their disputes with the IRS. However, as in *Brower* and *Alvarado*, the Thomases knew that they were exposed to a substantial liability for back taxes and penalties based on the IRS's rejection of the tax schemes sold to them by Grant Thornton when they received the notices of deficiency from the IRS in September 2006 at their homes in Kansas. The notices of deficiency consisting of multiple pages showed the calculated deficiencies and penalties and included detailed statements explaining how the deficiencies were figured. They also specifically informed the Thomases that the IRS was asserting that "various management entities were created to shift income from the operating company Olathe Toyota," that transactions between the various entities were not respected by the IRS because the companies "lack a legitimate business purpose and economic substance, and were formed for the sole purpose of obtaining tax benefits," and that payments made by the companies to the taxpayers and reflected on returns as "loans to shareholders" were "accounts used to shift monies to shareholders of the operating company or management companies as part of the tax avoidance transaction and/or do not represent bona fide debts." At the time and place they received their notices of deficiency, the Thomases were capable of ascertaining that they had sustained damages from the use of the abusive tax shelter schemes even though the full amount of the ultimate damages may not have been determined until the case was settled in tax court. The Thomases' claims for negligent misrepresentation, breach of fiduciary duty, and professional negligence originated in September 2006 in Kansas.

In their count for fraudulent misrepresentation, the Thomases alleged that Grant Thornton affirmatively misrepresented to them that the tax schemes were legitimate tax avoidance strategies that would withstand IRS scrutiny. Because a fiduciary relationship existed between

8

Grant Thornton and the Thomases, this claim accrued when the Thomases actually discovered the fraud. The Thomases contend that they did not learn that Grant Thornton's advice was fraudulent until they were forced to settle their tax court claim in 2009. However, as with their negligence claims, their cause of action for fraudulent misrepresentation also accrued when and where they received the notices of deficiency. The notices of deficiency alerted the Thomases to the facts giving rise to their fraud claim.[1] Upon receipt of the detailed notices of deficiency, the Thomases actually discovered that the tax schemes were not legitimate tax avoidance strategies as allegedly represented by Grant Thornton. *See, e.g., Nerman v. Alexander Grant & Co.*, 926 F.2d 717 (8th 1991)(fraud claim against accounting firm based on representations regarding investment and tax shelter deductions accrued when they received memo shortly after the investment was made disclosing risks, even before the IRS notified them that their tax deductions would be disallowed). All of the Thomases' causes of action originated in Kansas in September 2006, and the Kansas statute of limitations applies to those claims through Missouri's borrowing statute.

Under Kansas law, claims for negligent misrepresentation, breach of fiduciary duty, and professional negligence are governed by the two-year statute of limitations. K.S.A. § 60-513(a)(4). Fraud claims shall also be brought within two years. K.S.A. § 60-513(a)(3). Although the parties entered into tolling agreements, the agreements provided that they applied only to claims for which the statute of limitations had not already expired as of the effective date of the agreements. The effective date of the first agreement was September 1, 2011, long after

---

[1] The plaintiffs in *Alvarado* also brought a fraudulent misrepresentation claim and alleged in their petition that the first time they knew or could have known that the defendant had made false statements to them was in April 1993 when they discovered that their tax preparer had failed to appear for scheduled meetings with the IRS and had signed a notice of deficiency waiver without their authorization, which occurred two months after they received the notices of deficiency in February 1993. This court noted that the statute of limitations on the fraud claim commenced in April 1993 and that the claim was barred under the California statute of limitations. The parties did not argue, and this court did not need to decide, whether the notices of deficiency received two months earlier should have alerted the plaintiffs to the facts constituting the fraud.

the statute of limitations on the Thomases' claims had already expired.  The trial court did not err in dismissing the Thomases' claims for fraudulent and negligent misrepresentation, breach of fiduciary duty, and professional negligence.  The point is denied.

The judgment is affirmed.

_____
VICTOR C. HOWARD, JUDGE

All concur.